FILED
00 MAR 31 PM 4:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, } } } | |
| Plaintiff, } } | |
| v. } | CASE NO. CV 96-B-3385-S |
| YALE SCIENTIFIC, INC., } } | **ENTERED** |
| Defendant. } | APR - 3 2000 |

## MEMORANDUM OPINION

This action was brought by the Equal Employment Opportunity Commission (EEOC) on the behalf of three women. Plaintiff EEOC maintains that the Defendant Yale Scientific, Inc. (Yale) subjected Jacqueline Lawless, Sonja Hahn, and Tammy Ritch to hostile environment sexual harassment, quid pro quo sexual harassment, retaliation and constructive discharge. Defendant failed to timely answer the Complaint and a default was entered by the Clerk against defendant.

The conduct described by the three aggrieved individuals is extremely serious. Based on the facts presented, the court finds that defendant violated Title VII of the Civil Rights Act of 1964, as amended, by 1) subjecting Jacqueline Lawless, Sonja Hahn and Tammy Ritch to a supervisor's sexual harassment, which did not affect a tangible employment benefit; 2) subjecting Jacqueline Lawless to a supervisor's sexual harassment, which did affect a tangible employment benefits; and 3) constructively discharging Jacqueline Lawless, Sonja Hahn and Tammy Ritch. The court finds that Jacqueline Lawless was not subjected to retaliation.

## I. FACTS

Ms. Lawless began working for defendant in November, 1992, as a telemarketer. She was promoted to assistant manager and then to office manager. In February 1993, she was involuntarily demoted to assistant office manager.

Ms. Hahn began working for defendant in January 1993, as did Ms. Ritch. In early 1993, the line of supervision in the Birmingham facility was Jenny Barnhart, District Manager and Joe Hanley, Manager. Ms. Lawless was Assistant Manager and Sonja Hahn and Tammy Ritch were telemarketers.

Ms. Lawless, Ms. Hahn and Ms. Ritch testified that on February 24, 1993, the newly appointed office manager, Joe Hanley, began to make unwelcome sexual remarks to female employees. Later on the same day, in the presence of District Manager Jenny Barnhart, Hanley's supervisor, Hanley ran his hand down Ms. Lawless's back, buttocks and leg. Barnhart's only response was to laugh. On February 27, 1993, Hanley suggested to Ms. Lawless that she might try a form of sex paraphernalia. On March 1, 1993, Hanley made sexual comments to Ms. Lawless and asked her to have sex with him. As noted, he also touched Ms. Lawless. Ms. Lawless told Hanley that he should never touch her again.

Several days prior to the time that she went to the EEOC, Ms. Lawless testified that she called the Defendant's owner, Michael Caperton, in Atlanta. She told Caperton that female employees were being sexually harassed by Hanley and the Chattanooga trainer. Caperton stated that he would take care of it. Ms. Lawless tried to call Caperton back on several occasions. However, Caperton neither took the incoming calls nor returned the calls. No investigation was held. The sexual harassment continued, so Ms. Lawless went to the EEOC on March 2, 1993, for

2

advice and assistance.

When Ms. Lawless arrived at work on March 3, 1993, Hanley told her that she was being demoted and her pay was being cut because she had taken off from work because of "personal business." Ms. Ritch heard Hanley state that he was demoting Ms. Lawless because she, Ms. Lawless, would not go out with him. Ms. Lawless testified that she quit due to the sexual harassment and the demotion.

Sonja Hahn saw Mr. Hanley touch Lawless on her legs, her arms and her face. She heard Ms. Lawless tell Hanley to stop, but saw that Hanley did not. Ms. Hahn further saw Hanley touch Ms. Lawless's breast in the presence of Jenny Barnhart, District Manager. She heard Hanley's remark about Ms. Lawless's underwear and heard Hanley ask Ms. Lawless to stay after work, cautioning her that if she did not stay, then she must not be concerned about her job.

Ms. Hahn testified that she heard another manager from Chattanooga, who was on the premises to train, ask Ms. Lawless if she would go out and party and get naked. Ms. Hahn heard Ms. Lawless telling the manager that she was married and not interested.

Mr. Hanley, Yale's Birmingham manager, told Ms. Hahn that she needed Chinese balls (a sexual device). He further told her that she had a lot of sexual tension and that he would be glad to help relieve it. Hanley told Ms. Hahn that she needed to be spanked and that he was the one that should do it. Hanley would whisper in Ms. Hahn's ear as she was trying to work.

Ms. Hahn stated that she personally observed Ms. Lawless call a manager in Chattanooga to report the harassment but that the calls were neither taken nor returned by the manager. Ms. Lawless, Ms. Hahn and Ms. Ritch also reported the incidents to the police department. The police met with Ms. Lawless, Ms. Ritch and Ms. Hahn and took statements from them.

Ms. Hahn testified that she resigned her employment because of the harassment. She told Hanley that she had been to the EEOC and reported the sexual harassment. She stated that she was tired of being subjected to the sexual harassment and had no alternative but to quit.

Tammy Ritch was a telemarketer for defendant in January and February, 1993. She testified that she heard Hanley tell Ms. Hahn that she needed to put some Chinese balls (sexual devices) into her body. She also heard Hanley tell Ms. Hahn that she needed a good spanking and that he was the one to do it. She states that she heard the Chattanooga manager ask Ms. Hahn if she would like to go back to Chattanooga with him and get naked.

Ms. Ritch saw Hanley putting his arms around Ms. Lawless, rubbing her leg, and attempting to touch her breasts on an almost daily basis. She stated that Hanley told her that he demoted Ms. Lawless because she would not go out with him. Ms. Ritch testified that Hanley told jokes which graphically detailed animals having sex with animals and individuals having sex in swimming pools.

Ms. Ritch was also present when Lawless attempted, though unsuccessfully, to report the harassment to Chattanooga. She further knew that Jenny Barnhart, the district manager, was aware of the harassment. Barnhart did nothing to stop the harassment.

Evidence also showed that as a result of the sexual harassment, Ms. Lawless, Ms. Hahn, and Ms. Ritch suffered emotionally.

The evidence revealed that Jacqueline Lawless was subjected to unwanted and vulgar touching and remarks. She was frustrated in her attempts to stop the harassment. As a result, Ms. Lawless became stressed and frightened. She suffered headaches, fatigue and sleeplessness. While still employed with defendant Ms. Lawless became fearful of Hanley, especially since she left work at the same time as Hanley and she was afraid of being alone with him. For some time after leaving

Yale, she was uncomfortable working around men. Because of the feelings of inadequacy that she experienced, Ms. Lawless made no attempts to find a job in a management position for almost a year.

Sonja Hahn testified that as a result of being subjected to the sexual harassment, she felt humiliated and embarrassed. Ms. Hahn testified that after she left Yale, she was uncomfortable with trying to find a job. Because of the harassment that she suffered, Ms. Hahn's marriage was strained and she felt ashamed and violated.

Tammy Ritch stated that she observed Hanley touching other female employees and heard Hanley's vulgar remarks on a daily basis. The exposure to such a hostile work environment made her feel sick and disgusted for her fellow employees. According to Ms. Ritch's testimony, the environment in which she was forced to work left her feeling degraded, angry and belittled. She felt sick and disgusted by the harassment that she witnessed. Because of the harassment she witnessed, Ms. Ritch left her job on or about March 3, 1993.

During the time that they were employed, Sonja Hahn and Tammy Ritch each was paid $6.00 an hour for 40 hours per week. Jacqueline Lawless was paid $325.00 per week and $50.00 for every sale that she made and $10.00 for every sale made in the office while she was Office Manager. When she was the Assistant Manager, she was paid $300.00 per week and $50.00 for every sale that she made.

In approximately late January 1994, defendant ceased doing business in the Birmingham area. It appears that defendant no longer is in business in any of its locations.

During the EEOC's Investigation defendant provided no response to the EEOC's requests for position statements and/or other documentation. Defendant made no response to the EEOC'S

invitation to engage in Conciliation. When the EEOC attempted to serve the Complaint through the use of a Waiver of Service, defendant did not respond. Only after being served by the United States Marshal's office did defendant contact an attorney and consider responding to the EEOC's allegations. However, after initially indicating that it would file an answer, defendant failed to do so.

## II. DISCUSSION

A.  SEXUAL HARASSMENT.

Title VII of the Civil Rights Act prohibits discrimination on the basis of sex. Although the language of Title VII does not specifically address the issue of whether sexual harassment constitutes discrimination on the basis of sex, it is now well established that Title VII does prohibit such conduct. *See, e.g., Meritor Sav. Bank v. Vinson*, 477 U.S. 57 (1986) *Henson v. City of Dundee*, 682 F.2d 897 (11th Cir.1982); *Bundy v. Jackson*, 641 F.2d 934 (D.C.Cir.1981).

The analysis in *Burlington Industries, Inc. v. Ellerth*, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. Boca, Raton, Fla.*, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) is applicable here as the sexual harassment allegations involve harassment by a supervisor. The court will first discuss the allegations of whether the supervisor subjected the three female employees to sexual harassment that did not affect a tangible job benefit, then the court will discuss the allegations of whether the supervisor subjected Jacqueline Lawless to sexual harassment that did affect a tangible job benefit.

1.  Sexual Harassment by a Supervisor Where No Tangible Employment Action is Taken.

After *Faragher* and *Burlington Industries*, the Eleventh Circuit reiterated the elements necessary to prove a sexual harassment claim. The court held:

6

> The elements of a Title VII sexual harassment claim are the following: (1) the employee must belong to a protected group; (2) the employee must have been subject to unwelcome sexual harassment; (3) the harassment must have been based on sex; (4) the harassment must have been sufficiently severe or pervasive to alter the terms and conditions of employment; and (5) there must be a basis for holding the employer liable for the harassment either directly or indirectly.

*Mendoza v. Borden, Inc.*, 158 F.3d 1171, 1775 (11th Cir. 1998).

The first element is proven by the fact that the aggrieved parties are females.

The testimony of the three witnesses establishes the second element, that the sexual harassment was unwelcome. The female employees complained to the manager and told him to stop. They also complained to defendant's District Manager, to management at another facility and to the defendant Company's owner. Therefore, it is clear that the sexual harassment was considered unwelcome.

The third element, that the harassment was based on sex, is established based on the description of the incidents involving the manager's touching buttocks and breasts, using vulgar sexual language, telling sexual jokes and making sexual propositions. Such actions were of a sexual nature and were "because of sex".

The fourth element is established if the harassment complained of was "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor*, 477 U.S. at 67 (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.1982). In determining whether defendant's conduct is sufficiently severe and pervasive to constitute sexual harassment, the court must look not only to the frequency of the incidents of harassment, but also to the gravity of the incidents as well. See *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1994). There is evidence that several female employees

were subjected to the manager's unwanted conduct and that some of them witnessed others being subjected to actions they found offensive. Testimony indicated that these actions occurred on a daily basis. The conduct continued to occur regardless of complaints to higher management. The testimony of the aggrieved individuals establishes that Hanley's conduct was "hostile" and "abusive."

The individual women testified to numerous incidents which occurred in a little over a one week time period. In addition they state that there were constant sexual remarks by Hanley. No individual incident of sexual harassment is to be considered in isolation. Rather the sexual harassment is established by the totality of the circumstances. *Meritor,* 106 S.Ct 2406, *Harris,* 114 S.Ct. 367.

Initially, the court was concerned over the harassment lasting only during an approximately eight day time period. However, based on the ongoing nature of the harassment, the number of employees subjected to it, their awareness of others being harassed, the serious nature of the harassment, the fact that the supervisor was the harasser and the fact that higher management, although on notice, did nothing to stop the harassment, the court finds that a hostile and/or abusive environment existed.

The fifth element is proven as there is a basis for holding the employer liable for the harassment either directly or indirectly. Under *Faragher* and *Burlington* an employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. In order to overcome liability, where no tangible employment benefit is affected, such as in this case, the employer must raise an affirmative defense and prove it by a preponderance of the evidence to avoid

liability. The defense comprises two necessary elements:

> (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. See *Faragher* and *Burlington, supra.*

Here, the employer has neither asserted nor proven the affirmative defense. Even if the employer had asserted the affirmative defense, the evidence is overwhelming that the employer did not exercise reasonable care to prevent and correct promptly any sexually harassing behavior. To the contrary, the evidence establishes that the harasser was the manager of Yale's Birmingham facility. His immediate superior was aware of the harassment and upper management, to the level of the company's owner, received complaints. Yet, no action was taken.

Furthermore, the individuals subjected to the harassment complained to the harasser, complained to upper management, complained to the owner. They made every attempt to avoid the harassment. Defendant made no response to the complaints.

Therefore, the court finds that defendant discriminated against Jacqueline Lawless, Sonja Hahn, and Tammy Ritch by subjecting them to their supervisor's sexual harassment, which did not affect a tangible job benefit.

2.  <u>Sexual Harassment by a Supervisor Where Tangible Employment Action is Taken.</u>

The same five elements listed in *Mendoza* must be proven in order to establish that Ms. Lawless was subjected to her supervisor's sexual harassment where a tangible employment benefit was affected. First, Ms. Lawless is a member of the protected class; she is female. Second, as explain in the analysis above, Ms. Lawless considered the harassment unwelcome. Third, there is sufficient evidence that the harassment was based on sex. Fourth, Ms. Lawless was demoted after

9

she refused to give in to the sexual harassment. Ms. Lawless, Ms. Hahn and Ms. Ritch testified that Ms. Lawless was told by Hanley that if she did not stay with him after work, she must not value her job. Ms. Ritch heard Hanley state that he was demoting Ms. Lawless because of her refusal to go out with him. The court finds that the testimony of Ms. Lawless, Ms. Hahn and Ms. Ritch establishes that Ms. Lawless was demoted when she refused to accede to Hanley's sexual advances. Therefore, the court concludes that Ms. Lawless was subjected to sexual harassment by her supervisor which involved a tangible detriment to her job.

The fifth element, a basis for holding the employer liable for the harassment, is also present. According to *Faragher* and *Burlington,* an employer is strictly liable and no affirmative defense is available when the supervisor's action culminates in a tangible employment action that is to the plaintiff's detriment. Therefore, the court finds that defendant is strictly liable for its Manager's conduct of demoting Ms. Lawless because she refused his sexual advances.

B.  RETALIATION

In order to establish a *prima facie* case of retaliation under Title VII, the Plaintiff must establish 1) a statutorily protected activity, 2) an adverse employment action and 3) a causal link between the protected activity and the adverse action. *Biggs v. Albertsons, Inc.,* 894 F.2d 1497, 1501 (11th Cir. 1990).

The EEOC asserts that Ms. Lawless was retaliated against because she filed a charge with the EEOC. One day after filing the Charge of Discrimination with the EEOC, Ms. Lawless was demoted. The EEOC and Ms. Lawless assert that they believe that defendant knew that Ms. Lawless had gone to the EEOC because she had discussed it with several Yale employees prior to going and that defendant's manager found out about those discussions. While this may have occurred, the

court finds that there is insufficient evidence before the court to hold that defendant had knowledge that Ms. Lawless had gone to the EEOC at the time that she was demoted. Because the court is of the opinion that insufficient evidence exists to establish that defendant has knowledge of Ms. Lawless's EEOC charge prior to taking adverse action against her, her Title VII claim for retaliation fails.

C.   CONSTRUCTIVE DISCHARGE

Finally, the court finds that Jacqueline Lawless, Sonja Hahn, and Tammy Ritch were constructively discharged. In order to prove constructive discharge the working conditions had to have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. *Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1317 (11th Cir. 1989). Ms. Lawless was first subjected to sexual language, touching, and propositions. She complained about this unwanted behavior and was laughed at and ignored by the Defendant's upper management and the Defendant's owner. She then sought advice from the EEOC. When she returned to work after seeking advice from the EEOC she was told that she was being demoted. Ms. Lawless then resigned.

Ms. Hahn and Ms. Ritch both told Hanley that they were resigning due to the sexual harassment after going to the EEOC. They made this decision because of the environment that they had to endure and because there appeared to be no way to make the harassment cease.

Based on the testimony of Ms. Lawless, Ms. Hahn, and Ms. Ritch as to the terrible environment in which they worked and their inability to obtain relief, the court finds that they were constructively discharged.

D.   BACK PAY AWARD

Section 706 (f)(2)(g) of Title VII of the Civil Rights Act of 1964, as amended, provides that where the court finds that the employer defendant has intentionally engaged in the unlawful employment practice alleged in the Complaint, the court may award back pay and other equitable relief, as appropriate. The statute goes on to explain that interim earnings or amounts earnable with reasonable diligence by the persons discriminated against shall operate to reduce back pay.

Once a finding is made that defendant discriminated against Jacqueline Lawless, Sonja Hahn, and Tammy Ritch in violation of Title VII, the aggrieved individuals presumptively are entitled to back pay to make them whole. *Albermarle Paper Company v. Moody*, 422 U.S. 405, 418 (1975).

Defendant closed its Birmingham facility in January 1994. Therefore, any back pay awarded to defendant's aggrieved employees should be cut off as of January 1994.

Ms. Lawless worked at three other companies in 1993 after she left Yale. The first was owned by the Capertons, who had also owned Yale, and as soon as she discovered that fact she quit. She left the next employer when she was transferred to night shift and was expected to make sales calls after dark. She was afraid to do so and left the company. In her final job in 1993 she was laid off for lack of work. Ms. Lawless made substantial efforts to mitigate her damages and left each position through no fault of her own. The court awards Ms. Lawless $8,149.67 in back pay. (*See* Affidavit of William Hopkins, EEOC Paralegal Specialist.)

The court finds that Ms. Hahn and Ms. Ritch did not sufficiently mitigate their damages. In this case, one employee did sufficiently mitigate her damages, Ms. Lawless. Ms. Lawless left the Defendant's employ at the same time as Ms. Hahn and Ms. Ritch. The period for measuring back pay is the same for all three employees. In such a situation, the court holds that where a party has

not sufficiently mitigated damages through reasonable efforts to obtain other employment, the proper method to determine the appropriate back pay is to use the co-employee who obtained other employment as the better measure of sufficient mitigation of back pay. Because the court finds that Ms. Hahn and Ms. Ritch should have exercised more diligence in seeking employment, their back pay is reduced by the amount earned by Ms. Lawless but not completely eliminated.[1] The Court therefore awards Ms. Hahn and Ms. Lawless $2,775.93 each in back pay.

E.   COMPENSATORY AND PUNITIVE DAMAGES

Under Section 102 of the Civil Rights Act of 1991 both compensatory and punitive damages are available to victims of intentional sex discrimination. Compensatory damages may be recovered for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as well as for loss of actual out of pocket expenses. Punitive damages may be awarded against non-public employers where the employer acted with malice or reckless indifference to the victim's rights. The amount available for compensatory and punitive damages is capped, depending on the size of defendant. Here, where defendant has more than 14 employees and fewer than 101, the cap is $50,000.00 per employee. Both compensatory and punitive damages are due to be awarded to Ms. Lawless, Ms. Hahn and Ms. Ritch.

Ms. Lawless was, by her own testimony as well as that of the other affected women, subjected to greater harassment than anyone else. Furthermore, because of her refusal to submit to

---

[1]In order to calculate the appropriate back pay for Ms. Hahn and Ms. Ritch the Court first calculated how much the two women would have earned had they not been forced to leave their positions because of the intolerable conditions ($9,600.00 for 1993 and $960.00 for 1994). That amount was then reduced by the amount earned by Ms. Lawless, $7,784.07, from the time that the three women left Yale, in early March 1993, until January 1994, when Yale went out of business in Birmingham.

the sexual harassment, she suffered a demotion.  As a result Ms. Lawless was left questioning her own value and self-worth.  She was frightened and shocked.  She was unable eto contemplate holding another managerial position for almost a year.  She suffered headaches, fatigue and sleeplessness.  For a number of months she was uncomfortable working with men.  The court awards Ms. Lawless $25,000.00 in compensatory damages.

Because of the Hanley's actions, Ms. Hahn suffered marital strain. She experienced shame, feelings of violation, headaches and exhaustion.  Based on the evidence presented, the court awards Ms. Hahn $15,000.00 in compensatory damages.  Ms. Ritch was not as seriously affected as Ms. Hahn and Ms. Lawless.  However, because of the sexual harassment, she did feel degraded, angry, and belittled.  The conduct that she was forced to witness made her feel sick and disgusted.  Therefore, the court awards Ms. Ritch $5,000.00 in compensatory damages.

Defendant subjected these three female employees to such a horrible work environment that, within a very short period of time, they were compelled to quit.  Defendant showed a reckless disregard of the law.  When its employees complained, no action was taken.  When its employees filed charges of discrimination with the EEOC, not only did defendant then fail to take any affirmative action to assist its employees, it never even attempted to explain its position to the EEOC, other than to state that the harasser was dead a year and one half after the Charges had been filed.  Defendant never indicated any desire to conciliate the Charges.  Defendant's disregard of the law continued to be exhibited even after the EEOC filed a lawsuit.  When the EEOC attempted to use a Waiver of Service, defendant did not respond.  Only after defendant's Registered Agent for Service was served by the U.S. Marshal's office was there any response.  Such actions clearly evidence a reckless disregard and disrespect of the law and support an award of punitive damages.

Ms. Lawless, Ms. Hahn, and Ms. Rich are each awarded $25,000.00 in punitive damages.

## III. CONCLUSION

Based on the evidence submitted to the court and the testimony taken from the aggrieved individuals, the court finds that defendant violated Title VII of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991. Therefore, Ms. Lawless, Ms. Hahn, and Ms. Ritch are entitled to damages as set forth in this Opinion. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this  31st  day of March, 2000.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge

15